WASHINGTON COLLEGE v. DUKE, and THE SAME v. TEDFORD.

1. DE FACTO CORPORATION. No person sued on a contract entered into with a *de facto* corporation will be permitted to set up as a defense to the action the failure of the corporation to perfect its organization in the manner prescribed by the statute.

2. AMENDMENT OF ARTICLES OF INCORPORATION. When the articles of incorporation of a college, organized under the auspices of a religious denomination, provide for their own amendment or alteration in a manner named, an alteration affecting only the means to be employed in prosecuting the purpose of the corporation, and not the purpose itself, will not discharge the liability of the maker of a note executed in payment for a certificate of scholarship in such institution.

3. SAME. The Washington College was organized with articles of incorporation providing that the President of the institution should be a minister

of the Associated Presbyterian Church, which articles by their own terms provided for their alteration or amendment in a manner prescribed. They were so amended as to provide that the President should be a minister of the United Presbyterian Church: *Held*, That it did not release the maker of a note executed for a certificate of scholarship, before the alteration was made, from his liability thereon.

*Appeal from Washington District Court.*

WEDNESDAY, OCTOBER 15.

THE facts are fully stated in the opinion of the court.

*J. F. McJunkin* for the appellant, Duke.

I. The Washington College was not an incorporation before November 12, 1858, when the acts required by law to constitute it such were completed. Ang. & Ames Corp., 81–85; 1 Bla. Com., 468, *et seq.* ; Code of 1851, §§ 673, 675; *Carey* v. *The Cincinnati and Chicago Railroad Company*, 5 Iowa, 337; *McDonald* v. *Gray*, 11 Id., 508.

II. The burden of showing an incorporation is upon the plaintiff. Ang. & Ames, 632, and authorities referred to in the note; *Onondaga County Bank* v. *Carr*, 17 Wend., 443; *The Welland Canal Company* v. *Hathaway*, 8 Id., 480; *Utica Insurance Company* v. *Caldwell*, 3 Id., 296; *Same* v. *Tillman*, 1 Wend., 555; *Williams* v. *The Bank of Michigan*, 7 Wend., 539; *Bank of Utica* v. *Smalley*, 2 Com., 770; *Bell* v. *The Western Turnpike Company*, 14 John. R., 416; *Green* v. *Dems*, 6 Cow., 302; *Earnest* v. *Bartlett*, 1 John., 319.

III. The promise set out in the written agreement which is the subject of the action is to make a charitable donation, and is unsupported by a consideration. *Trustees of Hamilton College* v. *Stewart*, 1 Cow., 582 ; *Farmington Academy* v. *Allen*, 14 Mass., 171 ; 2 Pick., 578; 8 Mass., 292.

IV. The court erred in refusing to permit the defendant to show that after the execution of the contract in action, the Washington College passed from the control of the Associated Presbyterian Church into that of the United

Presbyterian Church. *Union Lock and Canal Company* v. *Towne*, 1 N. H., 44; *Middlesex Turnpike Company* v. *Lock*, 8 Mass., 268; *Same* v. *Swan*, 10 Mass., 384; Ang. & Ames, §§ 536–539.

*D. C. Cloud*, for the appellant, Tedford, contended:

1. That the plaintiff had no legal existence, and the note -was void for want of a payee, and could not be rendered valid by the subsequent incorporation of the college. 1 Pars. Cont. (2d ed.), 377, and notes; *James* v. *The Railroad Company et al.*, 6 Am. Law Reg., 726; *The Trustees, &c.*, v. *Davis*, 11 Mass., 268; *Casey* v. *The Cincinnati & Chicago Railroad Company*, 5 Iowa, 358; *Middlesex Turnpike Company* v. *Lock*, 8 Mass., 268; *Essex Turnpike Company* v. *Collins*, Id., 292; *Boulhwell et al.* v. *Codwin*, 9 Id., 253; *Salem Mildam Company* v. *Rhodes*, 6 Pick., 23; *The Scott Charitable Society* v. *Shaw*, 8 Mass., 532; *Methodist Episcopal Church* v. *Pickets*, 5 Smith (N. Y.), 482. 2. That the transfer affected the contract essentially, and the court erred in refusing to permit defendant to show it as a defense. *Penly* v. *Black*, 23 Pick., 283; *Cuthbert* v. *Cowie*, 10 Ala., 163.

*Richman & Bro.* for the appellee.

1. By meeting and adopting articles of incorporation, the Trustees of Washington College, became a corporate body in fact and in law. Commencing business before the articles were recorded, was an irregularity, a failure to follow a directory law, but does not affect the validity of the organization. Ang. & Ames, § 94.

2. The defendant is not a member of the corporation, and has no legal way of assenting or dissenting from its acts in any collateral proceeding. He is merely a person who contracts with a corporation as such, and thereby acknowledges its existence, and is estopped from denying it. Code

of 1581, § 1180 ; Ang. & Ames, § 94; *Eaton et al.* v. *Aspinwall*, 19 N. Y., 119 ; *The Buffalo and Pittsburgh Railroad Company* v. *Hatch*, 20 N. Y., 161.

3. The only method to determine the existence or rightful exercise of authority by a corporation, or by a person acting as such, is by direct proceedings for that purpose. Code of 1851, § 1180; Ang. & Ames, § 94, and the authorities there cited.

4. By the reservation of the right to alter or amend the articles of incorporation, the action of the trustees was authorized. If the trustees did transcend their powers, the act was void, and did not affect prior contracts made by the corporation.

5. The court did not err at excluding evidence, the object of which was to enlarge, explain or vary a written contract.

6. The suit was properly brought in the name of the plaintiff, on both note and subscription, the subscription having been assigned to plaintiff. *Gilmore* v. *Pope*, 5 Mass., 491 ; *Baker* v. *Chambles*, 4 G. Greene, 429.

Lowe, J. — In July, 1854, Washington College was founded and located in the town and county of Washington, of this State, under the auspices of the Associated Presbyterian Church of Iowa. At the same time, articles of incorporation were adopted, which, among other things, provided for the appointment of a board of trustees by said presbytery, and declared the corporate name, location and object of said collegiate institute.

Although these articles were filed at once for record in the office of the Recorder, they were not in fact recorded, for some reason, until the 12th day of November, 1858. Nevertheless, soon after their adoption in 1854, the evidence shows that the board of trustees commenced operations under them, a school was opened in 1855, a contract for a

college building was let in that year, subscriptions solicited, and scholarships sold, with the view of the permanent establishment and practical operation of said institution.

The articles aforesaid required that the president of this institution should be a minister in the Associated Presbyterian Church; but the same articles contained a provision that the same may be altered or amended at any regular meeting of the board, by a vote of a majority of all the members thereof. Accordingly, on the 4th of July, 1860, said board amended the first section of the third article, making it to read as follows: "The faculty of the institution shall consist of a president, and as many professors as may be judged necessary; provided that the president shall be a minister of the United Presbyterian Church," &c.

A subscription of $8,000 was taken to aid in the erection of a College building. Among others, the defendant, Thomas Duke, subscribed $100 for this purpose, which, after demand, he refused to pay. He also purchased a scholarship, and gave the following note therefor:

"$100, *Washington, September 1st, A. D.* 1855.

"For value received, I promise to pay to W. C. Anderson, as Treasurer of Washington College, Iowa, or his successor in office, one hundred dollars, with interest at six per cent. per annum; said interest to be paid semi-annually, on the first Monday of January, and first Monday of July: Provided, that the principal of the above obligation is not to be due and paid, so long as the interest shall be punctually paid, as specified above.

"Witness my hand and seal,

(Signed) "THOMAS DUKE."

In consideration of the execution and delivery of this note, the institution, by its President and Secretary, gave the following certificate of scholarship:

"This will certify that Thomas Duke is entitled to a perpetual scholarship in Washington College, located at Wash-

ington, Washington county, Iowa; he, the said Thomas Duke, having secured the payment of one hundred dollars by note, according to the provisions of a resolution of the board of trustees of said institution.

"Witness the seal of said corporation, and the signatures of the President and Secretary thereof, at Washington,        day of September, A. D. 1855.

(Signed)        "JOHN SCOTT, President.

"WM. H. WILSON, Sec'ry."

The defendant, Tedford, executed a similar note, and received from said institution a certificate of scholarship.

Both having failed, after demand, to pay the interest thereon, as stipulated, separate suits were instituted against the defendants, on said notes, including the subscription of $100 aforesaid against Duke. In these suits a judgment was obtained against each of the defendants, from which they both appeal.

The defenses set up are identical, and the two causes are, therefore, conjointly considered.

The questions raised in this court can, with propriety, be referred to two general propositions, which have received extended elaboration from counsel. Nevertheless, they may be disposed of by us in short space.

I. The first of these propositions is this: that at the time said subscription was taken and the notes sued on were executed, there was no such corporation *in esse* as Washington College; that although an attempt had been made in July, 1854, to form such an organization, yet in fact and in law it had not and could not be brought into being until the articles of incorporation were duly recorded as required by law; and that this did not occur until the 12th day of November, 1858, and hence it had no power to contract or be contracted with, until after that time, &c.

The answer to this objection is obvious, and to our minds conclusive. As a matter of fact, articles of incorporation

were adopted, officers elected, a college located, a school established, a building erected, subscriptions received, and scholarships sold, contracts entered into, and all the functions of a corporation of its kind exercised. These things and acts are incompatible with the idea of non-existence. It was a body corporate *de facto*. As such, it was recognized by the defendants, who entered into contract with it for scholarships; and § 704 of the Code of 1851 declares that no person sued on a contract made with such a corporation shall be permitted to set up a want of such legal organization in his defense. And this is at once a sufficient reply to all the phases in which the above objection has been presented by the counsel in argument.

II. The second proposition is predicable on facts already disclosed in the foregoing statement, that the subscription and scholarship aforesaid were made and taken, when by the terms of the constitution or articles of incorporation, the institution was to be under the superintendence of the Associate Presbyterian Church—its board of trustees to be designated by, and its President to be a minister of, said denomination. That afterwards, a change was made in said articles by which the trustees thereafter should be named by the United, instead of the Associate, Presbytery; and that the President should be a minister in and a member of the United, instead of the Associate, Presbyterian church; and that this change in the conduct and management of the institution had the effect, in law, to take away or put an end to the consideration of the aforesaid subscription and notes, and, as a consequence, to release the defendants from all liability thereon.

There would be some force in this position if the object in founding this institution was ecclesiastical, to teach and inculcate the distinctive faith and doctrine of said church, and to exalt and magnify its power and influence. But upon this point we are not left in doubt or conjecture.

The articles of incorporation expressly and specifically set forth that *the* object of the institution is to "afford a *thorough collegiate education*, to all persons, of both sexes, who may desire it," &c. To effect this object the more successfully it was deemed expedient to employ the prestige and influence of the Associate Church, and hence its agency was stipulated for and secured in the Constitution, reserving the power, however, to alter and amend the same at any regular meeting of the board of trustees. This was subsequently done—not in the. *object*, but in the means of attaining the object—the auspices of the Associate were simply exchanged for the more extended agencies and patronage of the United Presbyterian Church. The inculcation of the peculiar and distinctive doctrines of either of these churches (well understood to be substantially the same,) constituted no part of the great purpose of said institution, which was mental culture, under, to be sure, proper moral influences; but not the teaching of creeds.

The defendants, in purchasing their scholarships, are supposed to have been cognizant of the power of the corporation to change its articles, and of course made their contract subject to this right. Their defense upon this branch of the case is founded upon the hypothesis that the chief object of the institution was ecclesiastical, and not educational; that they are entitled to have their pupils instructed in the faith and canons of the Associate Presbyterian Church; and that by the above change, made in the Constitution, they have lost that right. This is clearly a misconception, and derives no support from the Constitution itself, which speaks a very different language, as we have already shown. The mistake seems to have arisen from a failure to distinguish between the real objects of the institution and the means or agencies to be employed in executing the object.

As the assignment of errors, in these cases, have their root in the two propositions which we have here briefly discussed, and held adversely to the appellants, it follows that they severally fall to the ground, and the judgment below in each case will be

Affirmed.