GEORGE SCHNIEDERS et al., Appellees, v. INCORPORATED TOWN OF POCAHONTAS et al., Appellees; NORTHWESTERN BELL TELEPHONE COMPANY, Intervener, Appellant.

No. 40357.

JANUARY 13, 1931.

REHEARING DENIED DECEMBER 17, 1931.

C. B. McCartan, for plaintiffs-appellees.

F. P. Hogan and J. M. Berry, for defendants-appellees.

A. J. Shaw and Parrish, Cohen, Guthrie, Watters & Halloran, for intervener-appellant.

DE GRAFF, J.—The plaintiffs, taxpayers and residents of the Incorporated Town of Pocahontas, Iowa, commenced the instant action against the said Town of Pocahontas and the members of the town council asserting that a certain telephone franchise voted favorably at a special election February 21, 1929, to the Northwestern Bell Telephone Company was invalid and ineffective because, as alleged, certain voters voting in favor of the franchise were for assigned reasons disqualified, and prayed that the election be declared invalid and ineffective and that the defendants be enjoined from passing any ordinance based on the said election.

The Northwestern Bell Telephone Company, being interested in the subject matter, filed its petition of intervention in which the Company alleged:

1. That the intervener was the corporation referred to in the public measure submitted to the electors.

2. That prior to February 21, 1929, there was filed with the mayor of the town of Pocahontas a petition in due form and signed by more than 50 property owners of the Incorporated Town of Pocahontas requesting said Mayor to call a special election of the electors of the Incorporated Town of Pocahontas, and to submit at said election the public measure or question of granting to the intervener a franchise authorizing said inter-vener to construct, maintain and operate a telephone plant within said town for the term of twenty-five years from the date of the acceptance of said franchise, and to occupy the streets, alleys and other public places of said incorporated town for said purpose.

3. That the mayor called the election.

4. That said election was held.

5. That at said election a majority of the electors voting thereon voted in favor of said public measure.

6. That thereafter and within 30 days thereof, the intervener filed with the town clerk of the Incorporated Town of

Pocahontas, Iowa, a written acceptance of said public measure and paid the costs of said election.

7. That the plaintiffs and defendants claim that the intervener acquired no rights by reason of the adoption of said public measure at said election and that said claim constitutes a cloud upon the title of intervener's said franchise.

The intervener prayed that the title to the franchise, which, as alleged vested in it by virtue of said election, be quieted and confirmed and that it have judgment against plaintiffs and defendants for costs.

The defendants filed a motion to strike and dismiss the allegations numbered 2 to 7 above set out, and for the reason that said matters contained in said allegations failed to state a cause of action against the defendants or either of them, and plainly disclose that intervener is not entitled to the relief demanded, as said allegations do not state facts upon which the relief prayed could be legally granted. The trial court in its ruling sustained the defendant's motion to strike and dismiss the petition of intervention. From this ruling the intervener Northwestern Bell Telephone Company appealed.

The respective contentions of the parties in this case constitute the only controversial legal questions for decision. These contentions will now be stated.

The appellant-intervener contends that as a result of said favorable election that the legal effect thereof resulted in the granting of a franchise to the intervener, and that no act of the councilmanic body of said town is necessary to give to the intervener the right to occupy the streets and other places of said town with its telephone system. The appellee town, on the contrary, contends and claims that the election held pursuant to the petition filed was for the purpose only of advising or authorizing the town that it may enter into such a franchise contract with the intervener. In other words, the granting of the franchise must finally be by the town acting through its councilmanic body, and consequently the intervener-appellant acquired no right in the streets and other public places of the town by reason of the election *per se*. It is necessary in making answer to the controverted question to refer to the applicable statutory provisions and to the interpretation given by this court to the said provisions.

Section 5904, Code, 1927, grants to cities·and towns the power to authorize and regulate telephones by general and uniform regulation and to provide the manner in which and places where the wiring and equipment shall ·be placed upon, along, or under the streets, avenues, alleys, and public places of such city or town. This section is found in Chapter 304, of Title XV, captioned City and Town Government. Section 5714, Code, 1927, found in Chapter 290, of the aforesaid title, provides:

"Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, * * *" (Title XV). Section 5717 of said chapter and title provides:

"No resolution or ordinance for any of the purposes hereinafter set forth, except as specifically provided by law, shall be adopted without a concurrence of a majority of the whole number of members elected to the council, by call of the yeas and nays which shall be recorded: 1. To pass or adopt any by-law or ordinance. 2. To pass or adopt any resolution or order to enter into a contract. * * *"

It is true that in the granting of a franchise of the character as contemplated and named in Section 5904, Code, 1927, the legislature has said in no uncertain terms that the electors shall express their approval or dissent ·on the proposition involved. Incorporated Town of Mapleton v. Iowa L. H. & P. Co., 206 Iowa 9, l. c. 15. It is further said:

"The interest granted is in the streets and alleys of the municipality. True, the franchise comes from the state; but the act of the local authorities who represent the state, by its permission and for that purpose, constitutes the act upon which the law operates to create the franchise. Therefore, a franchise may be defined as a special privilege conferred by a government on individuals, which does not belong to the citizens of the body politic generally by common right. It is a privilege or authority vested in certain persons by grant of the sovereign, to exercise powers or to do and perform acts which, without such grant, they could not do or perform. * * * The council had power to enact an ordinance prior to the vote, although no action on the

part of the council could establish the plant without the approving vote.''

The principle is well settled that a franchise of the character involved herein constitutes a contract between the state and municipality upon one hand and the grantee of the franchise upon the other. The franchise when granted cannot be abrogated by either party without the consent of the other. There can be no quarrel with the proposition that the police power belongs exclusively to sovereignty and inheres in the state without reservation in the constitution and is given expression by the legislature. This power can neither be abridged, abdicated nor bargained away. It results, therefore, that the state cannot divest itself in any manner of the power to enforce it.

''Since the state cannot divest itself of the police power, so when it is delegated to the city or town the latter, as the state's creature or agent, cannot divest itself of any such power so granted by contract, or otherwise; nor limit or restrain in any manner the full exercise of the power to protect the morals, safety, health, order, comfort or welfare of the public. This is true because a city or town in the exercise of its police powers acts in a governmental capacity, or, as sometimes said as the political agent of the state, and cannot be estopped by the contracts; it cannot abandon its duty in this respect even if it willed to do so.'' McQuillin on Municipal Corporations (2nd Ed.), Vol. 3, Sec. 935.

This principle is recognized in Smith v. City of Osceola, 178 Iowa 200, l. c. 213. In speaking of a franchise, it is there said:

''The primary object is not to give revenue or to secure revenue from these service corporations. It is to secure good and efficient service by these companies to the people of the municipality, upon such terms as, in the judgment of the council, promote the greatest good, not alone to those who use the utility, but to the entire community, including the city government itself. To this end, the relation established must be contractual. The municipality itself has the power and right to use its streets for the purpose of furnishing public service such as is furnished by these public service corporations. To this end, it has the right to erect, maintain and operate plants, and

use the streets for furnishing itself and inhabitants with the same service furnished by the public utility corporation or person. * * * The granting to another the right to discharge these duties, which the city itself has a right to discharge for itself, creates a contractual relation; and the granting of a franchise to one of these public utilities is in the nature of a contract by the city with the grantee for the performance of a public service —a service to the people of the municipality. These public utilities, when acting under a franchise of the city, are simply governmental agencies, and important aids to the city in discharging its public duties to the citizens of the city.''

The same doctrine is found in McLaughlin v. City of Newton, 189 Iowa 556, l. c. 563, wherein it is said: ''Every detail of this contract, in so far as the ordinances were contractual, was a matter of concern to the citizens and electors of the city. When they were called to the election, it was to express their approval or disapproval of the contract proposed by the city, every detail of which, in so far as it involved contractual rights and duties, was essential to be known by the voter, before he could intelligently approve or disapprove the same.''

It is contended, as heretofore pointed out, that the appellant intervener claims that it is the favorable vote of the legal electors that in itself creates the franchise. This contention is not sustainable in the light of our statutory provisions and our interpretative pronouncements.

Section 5905, Code, 1927, provides that no franchise shall be granted by any city or town for the use of its streets, highways or public places for any of the purposes named in Section 5904, which includes telephones, unless a majority of the legal electors voting thereon vote in favor of the same at a general, city or town, or special election. This statute provides:

''The council may order the question of the granting, renewal, or extension of any such franchise so submitted; or the mayor shall submit said question to such vote upon the petition of 25 property owners of each voting precinct in a city, or 50 property owners in any town.''

The statutory duty imposed on the mayor in the event the councilmanic body does not act is mandatory in order that the electors of the municipality might vote upon the basic franchise

proposition to be submitted to the electors. The mayor has no discretion in the matter. "He must act." Incorporated Town of Mapleton v. Iowa L. H. & P. Co., 206 Iowa 9, l. c. 17; Iowa Public Service Co. v. Tourgee, 208 Iowa 198, l. c. 201. In the instant case the mayor of the town of Pocahontas did respect the statutory mandate.

Section 5909, Code, 1927, provides that the party applying for the franchise, or a renewal or extension thereof, shall pay all expenses incurred in holding the election. Section 761, Code, 1927, constituting a part of Chapter 40, Title IV, provides the method to be followed when a constitutional amendment or other public measure is to be voted upon by the electors, and Sections 762 and 763 prescribe the general form of the ballot. It is said in Iowa Public Service Co. v. Tourgee, 208 Iowa 36, l. c. 42:

"A vote by the legal electors, as contemplated by the statute, does not compel the council to grant the franchise or pass the ordinance. All ordinances of this kind are to be adopted by the council. Grants are to be made by ordinance. Franchises are grants. * * * Obviously, it is the intent and purpose of the legislation aforesaid that an electric franchise ordinance shall be under the complete control and discretion of the city council, except that it is necessary for the voters to approve or authorize the same. Enactment is not made by the voters. They simply approve or authorize, and the council enacts. * * * Consequently, the council of Sac City were not required to pass the franchise ordinance, even though the legal voters authorized it."

In Farmers Telephone Company v. Town of Washta, 157 Iowa 447, it is said:

"They (franchise ordinances) can be validly enacted only by a vote in meeting duly assembled, upon which vote the yeas and nays must be 'called and recorded.' * * * As we read the code provisions to which we have adverted, they clearly contemplate that a grant or franchise from the city or town and its ratification by vote of the electors are conditions precedent to the right of any person or corporation to occupy the streets of such municipality with a telephone system."

The code provisions referred to in the above quotation were Sections 775 and 776, Code, 1897, which are now Sections 5904

and 5905, Code, 1927. The Farmers Telephone case, supra, was adhered to and the legal principle re-affirmed in East Boyer Telephone Co. v. Town of Vail (Iowa), 136 N. W. 120 (not officially reported), and was again affirmed in Smith v. City of Osceola, 178 Iowa 200. It was there said:

"It must be conceded that no telephone company can enter upon and use the streets for the erection of its poles and wires, except by consent of the city, (or town) expressed by ordinance."

As pointed out in the Farmers Telephone case, supra:

"The opposite conclusion would come as a surprise, not only to the profession and to the cities and towns of the state, but to the promoters and proprietors of telephone enterprises themselves, and result in an unfortunate increase of confusion and disharmony."

We conclude in the instant matter under the record evidence that no franchise was granted by the favorable vote of the electors, and not until and unless the town council of Pocahontas enacted an ordinance in conformity to Section 5717, Code, 1927. The town council of Pocahontas has not so acted. It follows that the ruling of the trial court in striking and dismissing the material allegations of the petition of intervention was correct. —Affirmed.

All Justices concur.