**CITY OF DES MOINES, Iowa, Appellant,**

v.

**The IOWA STATE COMMERCE COMMISSION, Appellee,**

**Iowa Power and Light Company, Intervenor-Appellee.**

**No. 62520.**

Supreme Court of Iowa.

Nov. 14, 1979.

Phillip T. Riley and M. A. Iverson, Des Moines, and John H. Reichman of Surrey, Karasik, Morse & Seham, New York City, for appellant.

James R. Maret, Gary D. Stewart, and Diane L. McIntire, Des Moines, for appellee.

John C. Cortesio, Jr., Terry C. Hancock, and William L. Dawe of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for inter-venor-appellee.

McGIVERIN, Justice.

The controlling question in this appeal is whether the franchise fee charged Intervenor Iowa Power and Light Company (Iowa Power) by petitioner City of Des Moines, Iowa (City), should be collected only from Iowa Power's customers in Des Moines or whether that cost should be paid as a system-wide expense by all the customers Iowa Power serves. Respondent Iowa State Commerce Commission (Commission) and the district court ruled the franchise fee should be collected only from Des Moines customers. City appeals. We affirm. Commission cross-appeals from another ruling of the district court. We dismiss the cross-appeal as moot.

The following questions must be answered in our review and disposition of the appeal:

1. When the Commission ruled the Des Moines franchise fee should be paid only by Des Moines customers of Iowa Power, were contractual rights of City, which were part of its franchise with Iowa Power, abridged in violation of section 476.23, The Code 1977, and 490A.23, The Code 1975?

2. Was the Commission's ruling supported by substantial evidence?

Under the terms of two 1960 Des Moines city ordinances, which were ratified by vote of the electorate, Iowa Power was granted franchises and the right for twenty-five years to acquire, construct, maintain, and operate the necessary facilities on or under public places for the production, distribution, and sale of gas and electric energy for public and private use in Des Moines. The franchises or agreements still in effect impose on Iowa Power annual franchise taxes or fees payable to the City of two percent of Iowa Power's gas revenues and one percent of its electric revenues derived from sales within the municipal boundaries of the City.

The franchises do not specifically provide a method by which Iowa Power is to recover the costs of the fees. However, since before 1960 the fees were treated by Iowa Power as a cost of doing business and the fees were spread equally among all its customers, including those living outside the City.

On January 30, 1976, Iowa Power filed a major tariff revision proposal with the Commission requesting increases in both electric and natural gas rates. The revision went into effect subject to refund on July 1, 1976. As a part of the revision, Iowa Power proposed to change the method of recovering the cost of the franchise fees. Each customer within the City would be surcharged his respective share of the franchise, fee, rather than spreading the cost of the franchise over the utility customers generally. The City challenged this aspect of the proposal by intervening in the proceedings before the Commission.

Testimony before the Commission established that the franchise fees were an identifiable cost that benefited the City by relieving city residents of taxes they would otherwise have to pay. Based on 1975 revenues the franchise payments made to City were nearly one million dollars, of which approximately one-half was paid by Iowa Power customers residing outside Des Moines. A witness for Iowa Power testified it was fair to shift the cost of those fees to customers benefiting from the payments.

The Commission approved the shift to City customers of the cost of the franchise fees finding, *inter alia*, that the previous method of recovering the cost of the fees was not an inherent part of the franchise or agreement between City and Iowa Power

and that the new method was just and reasonable.

City filed petitions for judicial review, later consolidated and also sought a stay order in district court under Chapter 17A, The Code 1977, from enforcement of the Commission's ruling. Iowa Power intervened under section 17A.19(2) on the side of respondent Commission.

The court (Denato, J.) denied the application for stay order. The court (Hass, J.) affirmed the ruling of the Commission. The Court found the evidence supported the Commission's finding that the new method of collecting franchise fees was just and reasonable and that there was no impairment of a contractual .obligation because the franchise agreements did not define the manner of recovering the cost of such fees.

■ Our review under section 17A.20 is not de novo. We "review the record in the manner specified in § 17A.19(7) and make anew the judicial determinations specified in § 17A.19(8)." *Hoffman v. Iowa Department of Transportation*, 257 N.W.2d 22, 25 (Iowa 1977); *see Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429 (Iowa 1979) (quoting *Hoffman* ). Our review is limited, as the district court's review was, to the record made before the Commission. *Davenport Community School District v. Iowa Civil Rights Commission*, 277 N.W.2d 907, 909 (Iowa 1979); *Hoffman*, 257 N.W.2d at 25.

*I. Did the Commission's ruling abridge City's contractual rights under sections 476.23, The Code 1977, and 490A.23, The Code 1975?* City first contends the Commission's order, allocating the full cost of the franchise fees to City residents, abridges an essential right acquired by the City

through its franchise or agreement with Iowa Power and therefore was in violation of sections 476.23, The Code 1977,[1] and 490A.23, The Code 1975.[2]

City claims that pursuant to the franchises the costs of the franchises were to be collected equally from all Iowa Power customers and that the Commission, by its order, abrogated that right.

Due to their length, we do not set out the two Des Moines ordinances granting the franchises. However, the ordinances, as City partially concedes, do not prescribe the method of collecting the franchise fees by Iowa Power.

City relies on what it regards as the intentions of the City and Iowa Power when the ordinances were passed by the City Council in 1960. City points to the fact that Iowa Power had for several years prior to 1960 paid a franchise tax to City and surcharged the tax to all of its customers. Also, in 1960 the president of Iowa Power in a written statement told the City Council, when it was considering the two ordinances, that "franchises have nothing to do with rates."

City further argues that sections 476.23 and 490A.23 preserve rights acquired by City through its franchise with Iowa Power even after the Commission was given utility rate-making authority by the legislature in 1963 by Chapter 490A, the Code. Section 490A.23 remained in effect until July 1, 1976, when the entire Chapter was revised to some extent as part of Chapter 476 of the 1977 Code. The present proceeding was then underway and section 476.23, The Code 1977, upon which City relies, became effective on July 1, 1976.

---

1. Section 476.23(4) provides:
   If not inconsistent with the provisions of this division:
     a. All rights of municipal corporations under chapter 364 to grant a person a franchise to erect, maintain, and operate plants and systems for electric light and power within the corporate boundaries, and rights acquired by franchise or agreement shall be preserved in these municipal corporations . . . .

2. Section 490A.23 provides in relevant part:
   All rights of municipal corporations to franchise and regulate use of streets, alleys and other public property, and all rights acquired by franchise or agreement shall be preserved in such municipalities, excepting only the duties and jurisdiction conferred upon the commission in this chapter.

■ We believe City's contentions fail for several reasons. First, the only franchise rights City had were those provided by the franchises themselves. However, the franchises do not state how Iowa Power is to collect the franchise fee. The Commission determined that the record did "not support the inference City argues, i.e., that the franchise agreement was predicated on system-wide recovery of the fee" and refused "to draw such an unsupported inference." This factual finding by the Commission is supported by substantial evidence on the record considered as a whole and answers adversely City's claim relative to the intentions of City and Iowa Power. *Second Injury Fund v. Mich. Coal Company*, 274 N.W.2d 300, 303 (Iowa 1979); *Catalfo v. Firestone Tire and Rubber Co.*, 213 N.W.2d 506, 509 (Iowa 1973).

■ Because no rights acquired by City under its franchise or agreement with Iowa Power are impaired, sections 490A.23, The Code 1975, and 476.23, The Code 1977, did not prohibit the Commission from determining that the rates charged City residents should include the costs of the franchise fees. The Commission has the delegated responsibility to fix rates that are "reasonable and just." § 476.8, The Code 1977; *see Davenport Water Company v. Iowa State Commerce Commission*, 190 N.W.2d 583, 592 (Iowa 1971).

Several courts considering the effect of a collection change such as that proposed by Iowa Power have determined that no impairment of a contract obligation exists if the franchise itself does not define the manner in which the fee shall be collected. The following from *City of Plant City v. Mayo*, 337 So.2d 966, 973 (Fla.1976), generally defines the position of some courts that have faced the problem:

> The amount paid by Tampa Electric to each city under its franchise fee contract is the same whether the utility collects the sum from some or all of its customers. Customers of Tampa Electric in each city have always paid some part of the amount the utility collects; the new procedure merely increases their burden. Nothing has changed as between the cities and the utility. We must conclude that the cities' contracts are no more impaired in the constitutional sense by the Commission's new collection procedure than they would be if rates were redesigned in other ways to increase their burden, for example by shifting rate levels among residential and industrial or commercial users. The fact that the cities themselves are consumers and subject to higher charges does not "impair" their contract; it merely reduces the benefit of their bargain as any rate increase or rate design shift might do.

(Footnotes omitted). It is also important to note that for the same reasons the court in *Mayo* found no violation of a 1975 Florida statute, which prevented "The Commission from affecting a city's right to 'continue to receive revenue from any public utility as is now provided . . . in any franchise.'" 337 So.2d at 973 n.20.

Other cases sustaining the Commission's action are *City of Elmhurst v. Western United Gas & Electric Co.*, 363 Ill. 144, 1 N.E.2d 489 (1936); *City of West Plains v. Missouri Public Service Commission*, 310 S.W.2d 925 (Mo.1958); *Ogden City v. Public Service Commission*, 123 Utah 437, 260 P.2d 751 (1953); and *City of Norfolk v. Chesapeake & Potomac Telephone Co.*, 216 Va. 317, 218 S.E.2d 531 (1975).

A case holding the other way is *City of Montrose v. Public Utilities Commission*, Colo., 590 P.2d 502 (1979). There the Public Utilities Commission ordered that municipal franchise charges be surcharged to municipal resident customers. The Supreme Court of Colorado, with one justice dissenting, found the decision of that commission unjust and discriminatory, as well as arbitrary and capricious. However, the evidence before the Commission showed that municipal ratepayers already subsidized the rural customers, both rural and municipal residents received benefits from the franchise and municipal customers alone provided the home base for the utility, which served both rural and municipal customers. We are not faced with such a record in the case presently before us.

In the present case the Commission's decision did not alter the City's rights actually given in the franchise. Iowa Power's obligation to pay, and City's right to receive, the franchise fees remained. The decision merely allocated the cost of the franchise fee payments directly to those who benefited from City's receipt of such payments.

■ We conclude the franchises did not give City a contractual right that Iowa Power continue to collect the Des Moines franchise fees on a system-wide basis, and the Commission's decision did not impair any franchise rights of the City. Consequently, any rights City had under sections 476.23 and 490A.23 were not abridged.

*II. Was the Commission's ruling supported by substantial evidence?* City contends there was not substantial evidence to support the Commission's ruling. City further claims the burden of proving the franchise fee collection system should be changed was on the Commission and not City, because the Commission had approved the system-wide collection basis for several years prior to 1976.

■ We have followed these general rules. A rate fixed by the Commission for a public utility is presumed to be valid and reasonable. The one challenging the validity of a rate has the burden of proving that it is unreasonable, confiscatory, excessive, or violative of constitutional immunities. *Davenport Water Company v. Iowa State Commerce Commission,* 190 N.W.2d 583, 590 (Iowa 1971).

In approving the change in method of recovering the cost of the identifiable franchise fees, the Commission found the new method to be just and reasonable. The Commission further found it would be discriminatory to impose those fees on nonresidents of City who did not benefit from City services.

We deem it unnecessary to detail further the evidentiary record made before the Commission in addition to that previously stated. However, the record supports and we agree with the following from the district court's ruling:

City has also argued . . . that the Commission's stance with respect to burden of proof was inconsistent and, therefore, assailable. The Court, however, has already pointed out that there was substantial evidence before the Commission justifying assignment of these identifiable costs to those receiving their ultimate benefit. With that evidence present, the Court cannot disturb the Commission's finding even if it were disposed to do so. . . .

City has argued also that the advantages that nonresident users obtain from the concentration of consumption within its boundaries and the consequent reduction of costs offset any burden imposed upon those nonresidents arising from their indirect contribution to the City's franchise tax. Commission was right in rejecting this argument for the reason, among others, that there was no substantial evidence in the record sustaining it. Commission could not avoid the conclusion found to be warranted under the law by simple reliance upon an unsupported assumption that economies are effected in a municipality sufficient in amount to offset a franchise fee collected by said municipality.

Substantial evidence supported the Commission's ruling.

Whether specifically discussed or not, we have considered all contentions made by City and find them without merit. We affirm on the appeal.

Commission cross-appeals from language in the court's ruling (Denato, J.) denying the City's petition for a stay order from enforcement of the Commission's decision. In the ruling, the court stated methods by which any overcharges could be recouped in the event City prevailed on the appeal. Commission objects to that statement by the court. We believe the district court's statement amounted to dicta and was not part of the ruling, which denied the stay order. In any event, the Commission's cross-appeal is moot because City has not prevailed on its appeal. No refund is necessary. We give the cross-appeal no further consideration.

AFFIRMED ON THE APPEAL; CROSS–APPEAL DISMISSED.

All justices concur except McCORMICK and ALLBEE, JJ., who take no part.