# IN THE SUPREME COURT OF IOWA

No. 41 / 06-0026

Filed May 26, 2006

**LISA KRAGNES,**

Appellee,

vs.

**CITY OF DES MOINES, IOWA,**

Appellant.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The city appeals a district court ruling granting a citizen's motion for partial summary judgment holding that the city's assessment of franchise fees is an illegal tax. **REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Mark Godwin, Deputy City Attorney, Des Moines, for appellant.

Bradley P. Schroeder of Hartung & Schroeder, Des Moines, for appellee.

Terrence L. Timmons, Des Moines, for amicus curiae Iowa League of Cities.

Ivan T. Webber and James R. Wainwright of Ahlers & Cooney, P.C., Des Moines, for amici curiae Cities of Sioux City, Dubuque, Early, Oskaloosa, Manchester, Algona, and West Des Moines.

John V. Donnelly of Sullivan & Ward, P.C., West Des Moines, for amicus curiae Iowa Association of Electric Cooperatives.

**WIGGINS, Justice.**

A citizen of the city of Des Moines brought an action against the city alleging the franchise fees the city assessed in its franchise agreements for gas and electric power services are illegal taxes. Both parties moved for summary judgment on this issue. The district court found the franchise fees were illegal taxes and enjoined the city from collecting the fees. Although we continue to adhere to our view that any franchise fee charged by a city must be reasonably related to the city's administrative expenses in the exercise of its police power in order not to constitute an illegal tax, we find there is a genuine issue of material fact as to whether all or part of the franchise fees in this case are so related. Accordingly, we reverse the district court's ruling and remand the case for further proceedings.

## I. Background Facts and Proceedings.

In 1960, the City of Des Moines (City) entered into an electric franchise agreement with Iowa Power and Light Company, a predecessor in interest to MidAmerican Energy Company (MidAmerican). The ordinance contained "an annual franchise, occupation or privilege tax" of one percent of the gross receipts derived from the company's distribution and sale of electric energy to customers within the corporate limits of the City. That same year, the City entered into a similar agreement with Iowa Power and Light Company concerning the distribution and sale of natural gas. This ordinance contained "an annual franchise, occupation or privilege tax" of two percent of the gross receipts derived from the company's distribution and sale of natural gas to customers within the corporate limits of the City.

After the expiration of the 1960 franchise agreements, the agreements were updated by ordinances. Iowa Power and Light Company retained the electric franchise for a fee equal to one percent of the gross receipts derived

from the company's sale of electric energy to customers within the corporate limits of the City. Midwest Gas Company held the gas franchise for a fee equal to one percent of the gross receipts derived from the company's sale of natural gas to customers within the corporate limits of the City.

On May 6, 2004, the governor signed a bill phasing out the sales and use taxes on the sale and furnishing of gas and electricity for residential use. 2004 Iowa Acts ch. 1133, § 1 (codified at Iowa Code § 423.3(84) (2005)). The legislation reduced the sales tax from five percent to two percent on residential users of gas and electricity billed on or after January 1, 2004, through December 31, 2004. Iowa Code § 423.3(84)(*b*)(1). The legislation further reduced the sales tax to one percent on residential users of gas and electricity billed on or after January 1, 2005, through December 31, 2005. *Id.* § 423.3(84)(*b*)(2). Finally, the legislation eliminated the sales tax on residential users of gas and electricity billed on or after January 1, 2006. *Id.* § 423.3(84)(*b*)(3).

At the time the governor signed the bill phasing out these sales and use taxes, the City was experiencing problems in delivering services to its residents because of diminishing funding from the state. The City was considering increasing its property taxes to hire more police and firefighters, fix deteriorating neighborhoods and streets, and maintain the library's hours. When the City realized the state was phasing out the sales and use taxes on residential gas and electric service, it recognized that if it replaced the sales and use taxes with a higher franchise fee, the actual cost of electricity and gas to the residential customers would not change. In deciding whether it should raise property taxes or increase the franchise fees, the city manager's office distributed a summary proposal giving an overview of franchise fees. The overview provided:

- A city may amend its electric light and power and/or gasworks franchise to provide for collection of a franchise fee under the Iowa Code. (Iowa Code § 364.2)

- The city council may grant, amend, extend or renew an electric light and power, heating or gasworks franchise without an election, subject only to the possibility of a reverse referendum petition. (Iowa Code § 364.2(4)(*b*)). However, a public hearing must be held.

- There is no statutory limit on the level of franchise fee to be collected, although as with any user fee it should bear a relationship to the cost to the city of the utility's occupancy of public areas in the city.

- Currently, all Iowa cities collecting franchise fees do so based on gross receipts. This would not have to be the basis of a franchise fee – in other words, the Code does not prohibit the collection of fees based on the "units sold" (e.g. therms or kwhs).

- A city must have a valid franchise ordinance in place that authorizes the collection of the fee.

- Franchise fees can only be collected from customers for facilities located within the corporate limits of the city imposing the fee.

- City facilities are exempted from collection of franchise fees. (Iowa Code § 364.2(4)(*f*))

- A city can exempt certain customer groups from collection of franchise fees. Algona collects franchise fees only on the distribution charges of gas transportation customers, not on the gas supply costs of transportation customers. Any exemption would have to be made on a nondiscriminatory basis.

- If a city imposes a local option sales tax, the enactment of an ordinance which imposes a franchise fee will eliminate the ability of the city to lawfully impose a local option sales tax on the sale or use of natural gas, natural gas service, electricity or electric service. (Iowa Code §§ 422B.8, 422E.3(2))

- 28E agreements have been used to transfer funds collected via franchise fees between governmental bodies. Rock Valley will be using a 28E agreement to transfer funds to the local school district to replace school funding that had been collected through a local option tax.

- A city which collects franchise fees can not also collect a fee for the use of its right of ways. (Iowa Code §§ 480A.3, 480A.6)

- MidAmerican Energy Company's role is to collect the fees established by the city ordinance and remit them to the city.

After determining an increase in the franchise fee was preferable to a property tax increase, the City proceeded to negotiate updated franchise agreements for gas and electric service with MidAmerican, which at the time held the franchise agreements with the City to provide it with gas and electric services. The updated agreements extended the gas and electric franchises for an additional ten years. The agreements also increased the franchise fee to three percent for gas and three percent for electricity effective September 2004. The agreements also permitted the city council to further increase the franchise fees to an amount not greater than six percent on a majority vote of the city council after giving the public fourteen days advance notice.

The City placed the ordinances amending the gas and electric franchises on the city council agenda for June 7, 2004. Prior to the council meeting, the city manager prepared a council communication regarding the franchise ordinances. The communication contained the following statements:

> At present, the City is facing a number of critical issues: the need for more police and firefighters required to meet homeland security responsibilities; deteriorating neighborhoods and streets; and reduced library hours. The need for higher property taxes is on the horizon to fulfill these basic service needs. Furthermore, the State is poised to eliminate more aid to local governments (i.e., Homestead and Veterans credits) which will further limit the City's capacity to maintain services.
>
> Over the last several years, resources and staff have been stretched to cope with the challenges of providing quality services while funding has diminished. However, a franchise fee increase offers the best alternative funding opportunity to

assure adequate and essential services are provided to the citizens of Des Moines. The net effects are minimal to residents because the fee structure adjusts to the historical rate once paid in 2001. . . .

. . . .

If the franchise fee were not available it would require a property tax rate increase to cover the costs for the same level of services needed. . . .

. . . .

I recommend committing [the franchise fees] to basic services of the city, which includes additional police officers (12) and firefighters (24), street reconstruction in neighborhoods, and reinstated library hours.

In lieu of increasing the property tax, the City passed the ordinances amending the franchise agreements, raising the franchise fee to three percent on gas and three percent on electricity. The Iowa utilities board approved the amended franchise agreements.

In September 2004, the City began receiving the increased fees. The City deposited the revenue generated by the franchise fees in its general fund. The 2004 increase in the franchise fees allowed the City to enact one of the largest property tax cuts in its history. In January 2005, the city manager reported to the mayor and the council that the increased franchise fees were generating enough revenue to restore the library hours, hire twenty-four additional firefighters, hire twelve additional police officers, provide low-income assistance to persons to have their utility services reconnected, make four economic development grants, make a grant to the Des Moines school system, fund improvement of the City's roads, and place $750,000 in the City's reserves.

In March 2005, the city council revisited the franchise ordinances. A majority of the city council passed a resolution increasing the franchise fee from three percent to five percent on gas and from three percent to five percent on electricity. This increase was effective June 1, 2005.

In the meantime, Lisa Kragnes filed a petition in equity on behalf of herself and all others similarly situated challenging the City's charging of the franchise fees expressed as a percentage of billings imposed on gas and electric utilities provided by MidAmerican. Kragnes, a resident of Des Moines, has been a customer of MidAmerican for her gas and electric utilities since 1994. In her petition, she claimed the franchise fees, charged and collected by the City through its franchise agreements with MidAmerican, are illegal taxes. Kragnes sought a declaratory judgment and/or order of mandamus ordering the City to reimburse her and other class members for all franchise fees paid dating back to the time allowed by the applicable statute of limitations until the end of the litigation. She also requested an injunction prohibiting the City from enforcing and/or collecting such franchise fees in the future.

The City answered Kragnes's petition denying various paragraphs of the petition. The City also asserted several affirmative defenses including the court's lack of jurisdiction to hear the case, Kragnes's failure to state a claim for which relief could be granted, Kragnes's lack of standing, claim preclusion based on the doctrine of laches, and Kragnes's failure to join indispensable parties to the case.

Kragnes filed her first motion for partial summary judgment asserting the Iowa utilities board did not have exclusive jurisdiction, she did not fail to exhaust her administrative remedies, and the present suit was not a collateral attack on a final agency action. The City did not resist the motion. The district court granted Kragnes partial summary judgment on these issues, finding it had subject matter jurisdiction of the case and Kragnes stated a claim upon which relief could be granted.

The City filed a motion for summary judgment claiming there was no genuine issue of material fact in dispute that the franchise fees on gas and electric service it was collecting were "not illegal sales taxes." On the same day, Kragnes filed her second motion for partial summary judgment claiming there was no genuine issue of material fact in dispute that the franchise fees on gas and electric service collected by the City were "outside the scope of its legal authority to tax."

The district court denied the City's motion for summary judgment and granted Kragnes's second motion for partial summary judgment. In its ruling, the district court found no genuine issue of material fact existed and declared the franchise fees to be illegal taxes. The court enjoined the City from collecting or assessing the franchise fees under the ordinances. The City filed a motion for stay without supersedeas bond. The court denied the motion but limited the injunction to the collection and assessment of the franchise fees to only Kragnes.

The City filed a notice of appeal, which we treated as an application for interlocutory appeal. We granted the City's application. The district court issued an order staying any further proceedings, including the issue of class certification, pending this appeal.

**II. Issue.**

The issue presented is whether the district court erred when it held no genuine issue of material fact existed and determined the franchise fees were illegal taxes.

**III. Scope of Review.**

Actions tried in equity are ordinarily reviewed de novo. *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 524 (Iowa 2005). However, because the district court resolved this case on motions

for summary judgment, our review is for the correction of errors at law. *Id.* We have said:

> "If there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. We can resolve a matter on summary judgment if the record reveals a conflict only concerns the legal consequences of undisputed facts."

*City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005) (citation omitted). In determining whether summary judgment is proper, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact. *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005).

### IV.  Applicable Legal Principles.

The City entered into the amended franchise agreements with MidAmerican pursuant to the authority granted it by the Iowa Code. Iowa Code § 364.2(4)(*a*) (2003). The Code provides:

> A city may grant to any person a franchise to erect, maintain, and operate plants and systems for electric light and power, heating, telegraph, cable television, district telegraph and alarm, motor bus, trolley bus, street railway or other public transit, waterworks, or gasworks, within the city for a term of not more than twenty-five years. When considering whether to grant, amend, extend, or renew a franchise, a city shall hold a public hearing on the question. Notice of the time and place of the hearing shall be published as provided in section 362.3. The franchise may be granted, amended, extended, or renewed only by an ordinance, but no exclusive franchise shall be granted, amended, extended, or renewed.

*Id.*

The genesis of section 364.2(4)(*a*) dates back to at least 1873. *See* Iowa Code § 473 (1873) (providing a city has the power to grant a private

entity a franchise to furnish water to the city).[1]  In construing an ordinance granting a franchise, this court said a "franchise" is

> a privilege granted by the state, or by some minor municipality acting under the authority of the state, to conduct a business of public utility,—such, for instance, as supplying the public with water, light, transportation, and other conveniences.

*Cedar Rapids Water Co. v. City of Cedar Rapids*, 118 Iowa 234, 239, 91 N.W. 1081, 1083 (1902).  This court also recognized that a franchise agreement is a contract between the city and the entity providing services to the city, subject to the same rules of interpretation as between other contracting parties.  *Id.* at 240, 91 N.W. at 1083.

In 1912 the City passed an ordinance attempting to recover the sum of $1 for each telegraph or telephone pole and $1 for each mile of line from a telephone company operating within the City.  *City of Des Moines v. Iowa Tel. Co.*, 181 Iowa 1282, 1284, 162 N.W. 323, 324 (1917).  The City brought an action against the telephone company for collection of those fees.  *Id.*  To support its claim that the City could not charge rent for its use of the streets and alleys, the telephone company relied on a statute that stated:

> "Any person or company may construct a telegraph or telephone line along the public highways of this state, or across the rivers or over any lands belonging to the state or to any private individual, and may erect the necessary fixtures therefor; *provided*, that when any highway along which said line has been constructed shall be changed, said person or company shall, upon ninety days' notice in writing, remove said line to said highway as established. . . . Such fixtures must not be so constructed as to incommode the public in the use of any highway or the navigation of any stream; nor shall

---

[1] In the 1888 Code, the legislature added gas works and electric light plants to the list of public services for which a city could grant a franchise to a private entity.  McClain's Code Ann. §§ 639, 641, 644 (1888).  In 1897, electric power plants were added to the list.  Iowa Code § 720 (1897).  By 1907, the legislature authorized cities to grant franchises "for interurban or street railways, gas or water-works, electric light or power plants, heating plants, telegraph or telephone systems, or other public service utilities."  1907 Iowa Acts ch. 48, § 12.

> they be set up on the private grounds of any individual without paying him a just equivalent for the damages he thereby sustains."

*Id.* at 1284-85, 162 N.W. at 324 (citations omitted). This statute remains virtually unchanged today. *See* Iowa Code §§ 477.1-477.3 (2005).

The City contended it owned the streets, alleys, and public grounds as any other private owner and it had the right to charge the reasonable value for the use of its property. *City of Des Moines*, 181 Iowa at 1287, 162 N.W. at 325. In rejecting this claim, our court made it clear that the City holds the fee title in trust for the public. *Id.* at 1289, 162 N.W. at 325. The court went on to state:

> "But it is a mistake to suppose that, where the fee of the streets is in the city, in trust for the public, the city is constitutionally and necessarily entitled to compensation, the same as a private proprietor holding the fee. The legislature might provide for such compensation, but is not bound to do so."

*Id.* at 1291, 162 N.W. at 326 (citation omitted). The court held the City was not "entitled to recover from the telephone company the rental value of its streets used by said company with its poles and wires." *Id.* at 1311, 162 N.W. at 331.

In 1931 this court had occasion to revisit the franchise statutes in a dispute between the town of Pocahontas, its residents, and Northwestern Bell Telephone Company. *Schnieders v. Inc. Town of Pocahontas*, 213 Iowa 807, 808, 234 N.W. 207, 208 (1931). In discussing the nature of a franchise agreement, this court recognized the purpose of a public service franchise was not to create a revenue stream for a city but to provide its citizens with services the city chooses not to provide. *See id.* at 811-12, 234 N.W. at 209 (stating " '[t]he primary object is not to give revenue or to secure revenue from these service corporations' " (citation omitted)).

In 1932 this court discussed the fees a city may receive in consideration for granting a franchise. *City of Pella v. Fowler*, 215 Iowa 90, 97, 244 N.W. 734, 738 (1932). There the city's franchise agreement with a grantee of a telephone franchise required the grantee to pay the city five percent of the gross receipts for the use of the city's streets and alleys. *Id.* at 92-93, 244 N.W. at 735-36. In addition to reaffirming that the legislature did not confer any authority upon the city to demand rent or compensation for the use of its streets and alleys, this court held a city can only collect a fee in connection with a franchise agreement if the amount of the fee is limited to the reasonable costs of regulating, supervising, or enforcing the franchise. *Id.* at 98-99, 244 N.W. at 738. The court further held the record failed to show that the fee charged by the city was anything more than an arbitrary amount and dismissed the city's action to collect the fee. *Id.*, 244 N.W. at 738-39.

In 1968 the Iowa Constitution was amended to give municipalities home rule power and authority. Iowa Const. art. III, § 38A. This amendment provided:

> Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.
>
> The rule or proposition of law that a municipal corporation possesses and can exercise only those powers granted in express words is not a part of the law of this state.

*Id.* After the enactment of the home-rule amendment, the Code provided "cities and towns shall not have power to levy any tax, assessment, excise, fee, charge or other exaction except as expressly authorized by statute." Iowa Code § 368.2 (1971). In 1972, the legislature passed a bill entitled

"Home Rule for Cities." 1972 Iowa Acts ch. 1088. This bill repealed section 368.2 effective July 1, 1974. *Id.* §§ 9, 199. In its place, the legislature only restricted a city from "levy[ing] a tax unless specifically authorized by a state law." *Id.* § 12 (now codified at Iowa Code § 364.3(4) (2005)). The bill also enacted the 1975 version of section 364.2(4)(*a*). *Id.* § 11.

In the instant case, the City argues by dropping the reference to fees and the other exactions, the legislature authorized a city to impose fees, including franchise fees. We agree with the City that the implementation of home rule and the Home Rule for Cities bill does authorize the City to charge a franchise fee. *See Nelson v. Rests. of Iowa, Inc.*, 338 N.W.2d 881, 884 (Iowa 1983) (stating "[w]hen an amendment to a statute deletes certain words, a change in the law is presumed unless the remaining language amounts to the same thing"). This conclusion, however, does not answer the issue involved in this appeal—that is, on what basis may a city assess a franchise fee to a private utility?

Since the home-rule amendment and the home-rule bill became effective, the Code has remained silent as to the basis on which a city may assess a franchise fee to a private utility. *See* Iowa Code § 364.2(4) (2003). The Code still prohibits a city from levying a tax unless specifically authorized by law. *Id.* § 364.3(4). Our court has defined a tax as " 'a charge to pay the cost of government without regard to special benefits conferred,' " meaning its primary purpose is to raise revenue. *Home Builders Ass'n of Greater Des Moines v. City of West Des Moines*, 644 N.W.2d 339, 346 (Iowa 2002) (citations omitted).

Unless there is clear evidence to the contrary, we assume that when the legislature enacts a law, it is aware of the existing state of the law and our prior interpretations of similar statutory provisions. *State v. Freeman,*

705 N.W.2d 286, 291 (Iowa 2005). At the time the legislature passed the Home Rule for Cities bill, our cases were clear that a city could only collect a fee in connection with a franchise agreement if the amount of the fee is limited to the reasonable costs of regulating, supervising, or enforcing the franchise. *City of Pella*, 215 Iowa at 98-99, 244 N.W. at 738.

Subsequent to the adoption of the home-rule amendment and the enactment of the Home Rule for Cities bill, we have had several occasions to discuss fees imposed by a city under its home-rule authority. In *City of Des Moines v. Iowa State Commerce Commission*, we were asked to decide: (1) whether a ruling by the commerce commission that franchise fees collected by the City should be paid only by the Des Moines customers of a utility abridged the contractual rights of the City under its franchise agreement with the utility; and (2) whether there was substantial evidence to support the commerce commission's ruling that it would be reasonable for the City to collect such fees only from the Des Moines customers. 285 N.W.2d 12, 13-14 (Iowa 1979). There we determined the City's contract rights were not abridged and substantial evidence supported the commerce commission's decision. *Id.* at 16.

The City contends this decision stands for the proposition that a city may collect a franchise fee based on a percentage of revenues derived from the utility customers because the franchise fees in question there were based on two percent of the gas revenues and one percent of the electric revenues derived from the customers. *See id.* at 13. We disagree. Even though the franchise agreements at issue there expressed the franchise fees in terms of a percentage of revenues, the issue before the court was not whether home-rule powers authorized the amount of the fee charged, but rather which customers were responsible for paying it. *See id.*

In 1999 we discussed the home-rule authority of a city to impose a user fee on a telephone company. *City of Hawarden v. US West Comm'ns, Inc.*, 590 N.W.2d 504, 506 (Iowa 1999). There the city terminated its franchise with the public utility because it established a municipal utility to furnish telephone and other communication services to its residents. *Id.* After terminating its franchise with the utility, the city passed an ordinance imposing a user fee of three percent of the gross revenues of non-municipal utilities operating within the city. *Id.* In declaring the city was without authority to impose a revenue-generating fee, we first noted any fees exacted in excess of the expenses incurred for the inspection, regulation, and supervision of the utility's use of public grounds are revenue-raising measures arising from a taxing power and not from a police power. *Id.* at 507, 509. In doing so, we reaffirmed the notion that a city is not entitled to recover the rental value of its streets used by a utility in connection with delivering services. *Id.* at 507. We also employed the reasoning of a case from the seventh circuit finding a city could not avoid limitations on its taxing power by calling a tax a franchise fee. *Id.* at 509. In applying this reasoning, we recognized the functional test adopted by the seventh circuit. *Id.* The test stated:

> "If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and within the municipality's regulatory power. If it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation."

*Id.* (citation omitted).

In 2002 we considered whether a city's mandatory park dedication fee was authorized under home rule. *Home Builders Ass'n of Greater Des Moines*, 644 N.W.2d at 345. There we reaffirmed the principle that a city

cannot impose a tax without express statutory authorization. *Id.* at 345-46. In applying this principle under a city's home-rule authority, we stated:

> [A] city may charge a fee to cover its administrative expenses in exercising its police power. Thus, the reasonable cost of inspecting, licensing, supervising, or otherwise regulating an activity may be imposed on those engaging in the activity in the form of a license fee, permit fee, or franchise fee.
>
> . . . .
>
> The rather narrow range of fees permitted by our cases is consistent with our long-standing definition of a tax. As noted above, a tax is "a charge to pay the cost of government *without regard to special benefits conferred.*" Consistent with this definition, the regulatory and service fees permitted under Iowa law are based on a special benefit conferred on the person paying the fee. In the regulatory context, fees enable the government to administer a particular activity or occupation to the peculiar benefit of those engaged in that activity or occupation. Therefore, fees designed to cover the administrative expense of regulating a particular activity, occupation, or transaction are not taxes.

*Id.* at 347-48 (citation omitted).

Our decisions reveal that even after the adoption of the home-rule amendment and the enactment of the Home Rule for Cities bill, we have continued to adhere to the position that a fee imposed by a city needs to be related to the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity in order to be permitted under a city's home-rule authority. If a fee charged by a city exceeds the amount necessary to inspect, license, supervise, or otherwise regulate the activity, it is nothing more than a tax levy, which the legislature has strictly prohibited. Iowa Code § 364.3(4).

Here, the City asks us to retreat from this position and find a fee exceeding the costs of inspecting, licensing, supervising, or otherwise regulating the activity is not a tax. In support of its argument, the City cites cases from other jurisdictions that it claims recognize a utility franchise fee

constitutes valuable consideration in return for the grant of the franchise and the right of the utility to use the right-of-way. These cases are based on constitutional, statutory, or case law authority that allows for such a charge. *See, e.g., Qwest Corp. v. City of Santa Fe*, 224 F. Supp. 2d 1305, 1319-22 (D.N.M. 2002) (looking to New Mexico statutes, constitutional provisions, and case law to determine the city has the authority to contract for fair and reasonable compensation as consideration for the utility's use of the public rights-of-way); *Bruce v. City of Colorado Springs*, 131 P.3d 1187, 1192 (Colo. Ct. App. 2005) (citing statutes and case law to hold a franchise fee charged by a municipality is not a tax, but rather rent paid by the utility for the use of the public rights-of-way); *Alpert v. Boise Water Corp.*, 795 P.2d 298, 306-07 (Idaho 1990) (finding the Idaho Constitution and the Idaho Code expressly allow a city to charge a franchise fee to the utility as valid consideration for the city surrendering its right to operate its own utility); *Kowalski v. City of Livonia*, 705 N.W.2d 161, 162 (Mich. Ct. App. 2005) (determining a franchise fee was not a tax based on case law providing that in order for a charge to qualify as a fee and not a tax, it must have a regulatory purpose rather than a revenue-raising purpose, it must be proportionate to the necessary costs of the services, and it is generally voluntary). Thus, we find these authorities distinguishable or unconvincing.

Before and after the adoption of home-rule authority, our case law has consistently held a license fee, permit fee, or franchise fee is not a tax so long as it is related to the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity that is being licensed, permitted, or franchised. We see no reason to retreat from this position. The legislature was well aware of our holdings in this area when it passed

enactments concerning home-rule authority. If the legislature thought it would be good public policy to allow a city to raise revenue by charging a franchise fee in excess of the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity, the legislature could have done so.

Consequently, any franchise fee charged by a city must be reasonably related to the city's administrative expenses in the exercise of its police power. These expenses include the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity the city is franchising. This holding, however, does not require the city to calculate its administrative expenses to a mathematical certainty. *See Bloom v. City of Fort Collins*, 784 P.2d 304, 308 (Colo. 1989) (holding special fees are not required to be determined to a mathematical exactitude as long as the ordinance creating the fee is "reasonably designed to defray the cost of the particular service rendered by the municipality").

There is a broad presumption that an ordinance is valid when the legislature vests the power in a city council to regulate, license, and control. *Star Transp. Co. v. City of Mason City*, 195 Iowa 930, 953, 192 N.W. 873, 882 (1923). In determining whether an ordinance creates a valid fee or an illegal tax, we have stated:

> "Where the grant [of power] is not made for revenue, but for regulation merely, a much narrower construction is to be applied" than where it confers the power also of raising revenue. But even where it is for regulation merely, "a fee for the license may still be exacted, but it must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. . . . But the limitation of the license fee to the necessary expenses will still leave a considerable field for the exercise of discretion when the amount of the fee is to be determined. . . . In fixing upon the fee, it is proper and reasonable to take into account, not the expense merely of direct regulation, but all the

incidental consequences that may be likely to subject the public to cost in consequence of the business licensed. In some cases, the incidental consequences are much the most important, and, indeed, are what are principally had in view when the fee is decided upon. . . . And all reasonable intendments must favor the fairness and justness of a fee thus fixed; it will not be held excessive unless it is manifestly something more than a fee or regulation."

*Id.* at 955-56, 192 N.W. at 883 (alterations in original) (citation omitted).

Under these principles, a city has the authority to assess a franchise fee expressed as a percentage of the gross receipts derived from the utility's sale of its services to the public, so long as the charge is reasonably related to the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity that is being franchised.

## V. Application of Law to Facts.

In order for Kragnes to prevail on her motion for partial summary judgment, the record must show "there is no genuine issue as to any material fact and that [she] is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Our review of the record indicates a genuine issue of material fact exists as to whether all or part of the franchise fees are reasonably related to the City's administrative expenses. The summary proposal distributed by the city manager's office stated "[t]here is no statutory limit on the level of franchise fee to be collected, although as with any user fee it should bear a relationship to the cost to the city of the utility's occupancy of public areas in the city."

Examining the record in the light most favorable to the City and drawing all legitimate inferences from the record, there is no question the grant of the franchises to the utility causes the City to incur some ongoing administrative expenses in the exercise of its police power. These expenses would include the reasonable costs of inspecting, supervising, and otherwise regulating the gas and electric utility franchises. Just because

the record is replete with references that the City used some portion of the franchise fees for purposes other than administrative expenses, this fact does not mean that the City is not using other streams of revenue to cover the administrative expenses it incurs as a result of granting MidAmerican the gas and electric utility franchises. Therefore, at this stage of the proceedings, the district court should not have declared the entire franchise fees assessed by the City to MidAmerican customers for the gas and electric services to be illegal taxes. Accordingly, we must reverse the district court's order granting Kragnes's second motion for partial summary judgment.

## VI. Disposition and Directions.

Because under this record a genuine issue of material fact exists as to whether all or part of the franchise fees charged by the City on gas and electric services are reasonably related to the City's administrative expenses in exercising its police power, we reverse the decision of the district court and remand the case to determine the class certification question and for a trial on the merits. At trial, the district court shall determine what, if any, part of the franchise fees are related to the City's administrative expenses in exercising its police power, including the costs associated with any incidental consequences of the franchised services. If after trial the district court determines that none of the franchise fees are reasonably related to the City's administrative expenses, the court shall issue the appropriate order disallowing the franchise fees as contained in the ordinances. However, if the district court determines that all or part of the franchise fees are reasonably related to the City's administrative expenses, the court shall enforce the ordinances up to an amount equal to the fees reasonably related to the City's administrative expenses in exercising its police power. *Cf. State ex rel. Turner v. Younker Bros., Inc.*, 210 N.W.2d 550, 565 (Iowa 1973)

(holding a department store was not allowed to collect finance charges on its retail installment contracts and revolving charge accounts that were in excess of the interest rate allowed by statute; however, the store was allowed to assess finance charges in the amount allowed by statute); *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 373 (Iowa 1971) (holding an employer may partially enforce a noncompete agreement to the extent it is reasonable under the circumstances).

**REVERSED AND CASE REMANDED WITH DIRECTIONS.**