# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1257

_____

Qwest Corporation, doing business as CenturyLink QC; Windstream
Communications, LLC, Formerly doing business as Windstream Communications,
Inc.; McLeodUSA Telecommunications Services, L.L.C.

*Plaintiffs - Appellants*

v.

City of Des Moines, Iowa

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 16, 2018
Filed: July 17, 2018

_____

Before BENTON, KELLY, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

In this case, several wire-line telecommunications carriers (collectively, the Carriers) contest an ordinance enacted by the City of Des Moines, Iowa. The ordinance charges the Carriers for their use of public rights-of-way. The Carriers claim the ordinance is preempted by federal law, and exceeds the City's powers under

Iowa Code chapter 480A. We affirm in part, vacate in part, and remand for further proceedings.

Wire-line carriers transmit telecommunications data through wires and cables. Often these wires are buried under, or suspended above, public rights-of-way like city streets and sidewalks. Iowa law requires municipalities to give private companies (like the Carriers) access to their rights-of-way, but allows municipalities to charge fees related to that access. At issue in this case are fees for "management costs," which Iowa municipalities can charge to public utilities that use the rights-of-way. Iowa Code § 480A.3. We will call these "management fees."

Des Moines first imposed a management fee in 1998. Back then, the City calculated the fee each year based on each individual carrier's total feet of line. Between 2002 and 2015, the management fees ranged from $0.0083/foot to $0.009/foot. In 2015, the City amended its management fee ordinance; this amendment went into effect on January 1, 2018. Under the amended ordinance, the City stopped calculating management fees each year. Instead, the City adopted a schedule whereby it would increase the fee by $0.02/foot every year until it reached a target fee of $0.12/foot. With this lawsuit, the Carriers challenge the new fee schedule.

The district court entered judgment for the City following a bench trial. With regards to the Carriers' claim that the ordinance was preempted by federal law, the district court found:

> The City's Ordinance does not violate federal law . . . The [Carriers] presented no credible evidence to prove the Ordinance would have an actual adverse effect that would eliminate their ability to provide telecommunications services. . . . [The Carriers] presented no evidence that increased fees would actually or effectively prohibit the provision of services. Even the [Carriers'] expert witness . . . was unable to

explain in testimony any actual adverse impact on the services to be provided.

With regards to the Carriers' claim that Des Moines had exceeded its authority under Iowa law, the district court concluded:

> The City's Ordinance does not violate State law . . . . [The City's expert's s]tudy demonstrated that the Ordinance is competitively neutral and reflects proportionately the costs incurred by the City as a result of the various types of uses of the [public rights-of-way]. The City's estimates of future costs complies with the general language of the Iowa Supreme Court [precedent] . . . .

Following a bench trial, our role is to review the district court's legal conclusions de novo and its factual findings for clear error. Urban Hotel Dev. Co. v. President Dev. Grp., L.C., 535 F.3d 874, 879 (8th Cir. 2008). On questions of Iowa state law, we are bound by the decisions of the Supreme Court of Iowa. See St. Paul Fire & Marine Ins. Co. v. Schrum, 149 F.3d 878, 880 (8th Cir. 1998). Absent Iowa case law directly on point, "we may consider 'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.'" Id. (quoting Lindsay Mfg. Co. v. Hartford Accident & Indem. Co., 118 F.3d 1263, 1267 (8th Cir. 1997)).

We begin with the federal preemption issue. The federal Telecommunications Act preempts state and local laws and regulations if they "prohibit or have the effect of prohibiting the ability of any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). In the first step of this analysis, the Carriers must show that the City "formally or effectively prohibit[ed] entry into the [telecommunication services] market." Level 3 Comms., LLC v. City of St. Louis, 477 F.3d 528, 532 (8th Cir. 2007). The Carriers present no evidence that the fee increase formally or effectively prohibits entry into the Des Moines telecommunications market. Absent any such

-3-

evidence, we conclude that the Telecommunications Act does not preempt the City's ordinance. We affirm the district court's finding of non-preemption.

Turning to the state-law issue, the question is whether the City exceeded its authority under Iowa law when it adopted a new management fee schedule. Iowa Code § 480A.3 authorizes the City to charge the Carriers management fees. The statute limits fees to "those management costs *caused by* the public utility's activity in the public right-of-way." Iowa Code § 480A.3 (emphasis added). The code defines "management costs" as "the reasonable costs a local government *actually incurs in managing* public rights-of-ways." Iowa Code § 480A.2(2) (emphasis added). Read together, these provisions authorize the City to collect fees to cover costs that (1) the City has actually incurred in managing the rights-of-way, (2) are reasonable, and (3) are caused by the public utility's activity in the rights-of-way.

On appeal, the parties' main disagreement is whether the City's construction costs qualify as "management costs" under the statute. To answer this question, we first have to resolve the parties' initial dispute over the meaning of "managing" and "actually incurred" as used in these statutory provisions. As to "managing," the Iowa legislature defined "management costs" as those "actually incurr[ed] in managing public rights-of-way," Iowa Code § 480A.2(2), but did not further define the word "managing." When interpreting statutory terms, the Iowa courts "consider the context in which the words of the statute are used." Lauridsen v. City of Okoboji Bd. of Adjustment, 554 N.W.2d 541, 544 (Iowa 1996). Here, the legislature explained that its purpose in enacting chapter 480A was to "*define* the right of local governments to charge public utilities for . . . operation of public utility facilities in local government rights-of-way." Iowa Code § 480A.1 (emphasis added). Since the legislature defined "management" using the word "managing," we conclude that the legislature intended these terms to be given their plain and ordinary meaning. In Iowa, that means we look to the dictionary definition of the term. Lauridsen, 554 N.W.2d at 544. "Manage" means "to conduct, carry on, supervise, or control."

-4-

Manage, Oxford English Dictionary (2018); see also MANAGE, Black's Law Dictionary (10th ed. 2014) ("1. To exercise executive, administrative, and supervisory powers. 2. To conduct, control, carry on, or supervise. 3. To regulate or administer a use or expenditure."). Thus, the City can satisfy the first element of the statutory definition by showing that it has actually incurred costs in conducting, carrying on, supervising, or controlling the public rights-of-way.

As to "actually incurred," the statute provides no definition. We think that is because the Iowa legislature used words that are clear enough. See Lauridsen, 554 N.W.2d at 544. A cost is actually incurred when it is no longer hypothetical or projected. Similarly, a future cost that has yet to materialize is also not a cost actually incurred. See, e.g., Actual, Oxford English Dictionary (2018) ("Existing in fact, real; carried out, acted in reality. [As o]pposed to potential, possible, ideal, etc."); Incur, Merriam-Webster Dictionary (2018) ("[T]o become liable or subject to . . . .").

Turning now to whether construction costs are "management costs" that the City can properly charge the Carriers, our answer is maybe. The parties agree that construction costs are the "increased costs that the City incurs to engineer and construct around the presence of utilities" in the public rights-of-way. These construction costs are management costs if they (1) are actually incurred in conducting, carrying on, supervising, or controlling the public rights-of-way; (2) are reasonable; and (3) are caused by the Carriers' activity in the right-of-way.

The City's principal argument—that all construction costs count as management costs—is based not on the plain language of chapter 480A but instead on a decision of the Supreme Court of Iowa called Kragnes II. See Kragnes v. City of Des Moines (Kragnes II), 810 N.W.2d 492 (Iowa 2012). In Kragnes I, the court had held that a city has authority to impose a franchise fee "so long as the charge is reasonably related to the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity that is being franchised." Kragnes v. City of Des

Moines (Kragnes I), 714 N.W.2d 632, 642–43 (Iowa 2006). In Kragnes II, the court then concluded that certain construction costs met this standard, and were thus a permissible component of the franchise fee. Kragnes II, 810 N.W.2d at 508–11. But Kragnes I and II concerned a different kind of municipal fee (franchise fees) imposed pursuant to a different statute (Iowa Code § 364.2), which are assessed under a different legal standard (reasonable relationship to exercise of police power). See id. at 497; Kragnes I, 714 N.W.2d at 642. That the Supreme Court of Iowa approved of various fees associated with the City's construction projects in Kragnes II does not dispose of this case.

Nevertheless, the Kragnes cases provide a useful backdrop for our analysis. See St. Paul Fire, 149 F.3d at 880. In Kragnes I, the Supreme Court of Iowa applied its longstanding home-rule precedent. It explained that Iowa municipalities lack power to levy taxes (unless authorized by the legislature), but may use their police power to impose certain fees. Kragnes I, 714 N.W.2d at 639–40. However, this regulatory power to charge fees must be given "a much narrower construction": fees are limited to those that "will legitimately assist in the regulation." Id. at 642 (quoting Star Transp. Co. v. Mason City, 192 N.W. 873, 883 (Iowa 1923)). We think our analysis of Iowa Code chapter 480A is consistent with these precedents because management fees are limited to costs actually incurred by municipalities in managing the rights-of-way, and because those limits are prescribed by chapter 480A's plain text.

With the proper legal standard in mind, we think the appropriate next step is to remand this matter for additional fact finding.[1] The record in this case is replete with dense reports and conflicting expert opinions. Much turns on which experts to

---

[1]The City argues that the district court simply adopted the City's proposed order. We see no indication that the district court did so and, in any event, we question whether this case's complex factual disputes are amenable to such summary disposition.

believe, and those decisions must be made in the first instance by the trier of fact. All of the parties' myriad remaining arguments involve application of the law to the facts—we do not address those arguments at this juncture.

For these reasons, we affirm the district court's finding of non-preemption, but vacate the judgment with regards to Iowa Code chapter 480A. We remand the case to the district court to make additional findings of fact, and apply the legal standard set out in this opinion.

_____